IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN FURMAN,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL NO. 3:CV-03-1807** |
| | : | |
| v. | : | **(JUDGE CAPUTO)** |
| | : | |
| **BENJAMIN MARTINEZ, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

# M E M O R A N D U M

## I.   Introduction.

Brian Furman, formerly[1] an inmate at the State Correctional Institution at Cresson, Pennsylvania, commenced this action with a *pro se* civil rights complaint filed pursuant to the provisions of 42 U.S.C. §1983.  Named as Defendants are Benjamin Martinez ("Martinez"), Chairman of the Pennsylvania Board of Probation and Parole ("PBPP"), and several defendants identified only as "John Does".[2]  Plaintiff claims that Defendants violated the *Ex Post Facto* clause of the United States Constitution by applying improper parole standards to his parole applications.  For relief he seeks declaratory judgment, compensatory damages (for loss of wages), punitive damages, costs of suit, and all other appropriate relief.  Pending before the Court are: (1) Plaintiff's motion for partial summary

---

[1]  Plaintiff was paroled to a Community Corrections Center in March, 2004.  *See* Doc. 47, ¶ 5.

[2]  Fictitious or "John Doe" defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be identified and substituted.  *Hindes v. F.D.I.C.,* 137 F.3d 148, 155 (3d Cir. 1998) (citations omitted).  Although Plaintiff filed a motion to amend his complaint and identify the John Doe Defendants (Doc. 50), the motion will be denied as moot.

judgment (Doc. 37); (2) Martinez' motion to amend his answer to the complaint (Doc. 43) to add affirmative defenses; (3) Martinez' cross motion for summary judgment (Doc. 45); (4) Plaintiff's motion to amend/correct complaint (Doc. 50) to identify John Doe defendants; and (5) Plaintiff's motion to amend (Doc. 54) his prior motion to amend, to comply with Middle District Local Rule 15.1.  For the reasons that follow, Plaintiff's motion for partial summary judgment will be denied, Martinez' cross motion for summary judgment will be granted, the complaint will be dismissed as to the remaining defendants under 28 U.S.C. § 1915(e)(2)(B)(ii), and the motions to amend will be denied as moot.

## II. **Background.**

The facts are undisputed.  On December 11, 1987, Plaintiff pled guilty to involuntary deviate sexual intercourse, terroristic threats, false imprisonment, and indecent assault, and he was sentenced to a term of imprisonment of eight (8) to twenty-one (21) years. Plaintiff's minimum sentence date was March 13, 1995, and his maximum sentence date was March 13, 2008.  Although Plaintiff was reviewed for and denied parole a total of eight (8) times, in March, 2004 Plaintiff was paroled by the Pennsylvania Board of Probation and Parole ("PBPP") to a Community Corrections Center.  Plaintiff is challenging his five (5) most recent parole denials, claiming that the PBPP applied amended parole standards to his parole applications in violation of the *Ex Post Facto* Clause.  Martinez claims that Plaintiff's claim is barred by the applicable statute of limitations as it relates to the parole denials prior to October 9, 2001, and Plaintiff's claim is without merit as it relates to the remaining parole denials.

**III.     Discussion.**

    **A.  Statute of Limitations.**

In reviewing the applicability of the statute of limitations to an action filed pursuant to §1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995); *Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 220 (3d Cir. 2004).  Pennsylvania's applicable personal injury statute of limitations is two years. *See* 42 Pa.C.S. § 5524(7); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993).  The statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

Plaintiff is challenging parole denials entered on June 23, 1998 (Doc. 1, Ex. E), July 6, 1999 (*Id.*, Ex. G), March 12, 2001 (*Id.*, Ex. I), March 22, 2002 (*Id.*, Ex. T), and April 30, 2003 (*Id.*, Ex. U).  However, Plaintiff did not file his complaint until October 9, 2003, approximately five (5) years after the first challenged review.  Consequently, Plaintiff's claims related to the first three parole reviews are barred by Pennsylvania's applicable two-year statute of limitations for personal injury actions, and the Court will limit review to the last two (2) parole denials.

    **B.  Summary Judgment Standard**

Both Plaintiff and Martinez have filed motions for summary judgment.  Under Federal Rule of Civil Procedure 56(c), summary judgment may be entered only "if the

3

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The parties do not dispute the facts, and the dispute resolves to a legal interpretation of the parole decisions.

Moreover, Rule 56 provides that the adverse party may not simply sit back and rest on the allegations contained in the pleadings. Rather, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). When addressing a summary judgment motion, the inquiry focuses on "whether *the evidence* presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52 (emphasis added). It is also well-settled that *pro se* complaints should be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### C. Ex Post Facto Claim

As previously stated, remaining at issue are Plaintiff's parole denials of March 22, 2002 (Doc. 1, Ex. T) and April 30, 2003 (*Id.*, Ex. U). Plaintiff challenges each on the grounds that they violate the *Ex Post Facto* Clause of the United States Constitution. Prior to 1996, the PBPP's internal policies required it to weigh the inmate's rehabilitation and liberty interest with the interest of public safety in parole evaluations.[3] *Mickens-Thomas v.*

---

[3]The Third Circuit Court of Appeals explained that:

[i]n considering an inmate for parole, the Board must weigh numerous factors relative to the welfare of the client and the safety of the community, including

4

*Vaughn*, 321 F.3d 374, 378 (3d Cir. 2003).   Specifically, the Court noted "that the [PBPP's] Manual of Operations and Procedures recognized that '[p]robation and parole services *must* consider that offenders can change their behavior patterns when desirous, capable, and given the opportunity, help, dignity, and respect they deserve as human beings.' " *Id*. (emphasis added).  In December 1996, the Pennsylvania Legislature added new language to the "aspirational introductory provision" of the parole statute, requiring that the "public safety must be considered first and foremost in the [PBPP's] execution of its mission." *Id*. at 377 (internal quotation omitted).

Plaintiff correctly notes that the United States Court of Appeals for the Third Circuit has held that the PBPP's initial interpretation of the 1996 amendments to the Pennsylvania parole statute, found at 61 P.S. § 331.1, violated the *Ex Post Facto* Clause. *Id*. at 393.  In *Mickens-Thomas*, the Third Circuit Court of Appeals addressed a habeas corpus petition filed by a prisoner whose life sentence had been commuted to a term of years with parole eligibility.  The petitioner claimed that application of revised parole standards violated the *Ex Post Facto* Clause, and he was entitled to review under the standards in place at the time of conviction.  The Court concluded that the revised Parole Board policy, "although

---

> seriousness of the offense; length of the sentence; institutional adjustment (behavior and program adjustment); and assessment of the effect of rehabilitation services while incarcerated. Whether the individual can be safely supervised in the community, personality characteristics, any history of family violence, strength of the parole plan (home and employment), testimony from victims, and opinions of the sentencing judge and prosecuting attorney must also be considered.

*Mickens-Thomas*, 321 F.3d at 378 (internal quotation omitted).

partly discretionary, is still subject to *ex post facto* analysis when there are sufficiently discernable criteria to suggest to a reviewing body that the new retroactive policies are being applied against the offender's interest." *Id.* at 386. "An adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence." *Id*. at 392. The Third Circuit Court of Appeals held that retroactive application of "changes in the parole laws made after conviction" that adversely impacted the likelihood of parole violated the *Ex Post Facto* Clause. The Court concluded that the PBPP "mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." *Id*. at 391.

Notwithstanding this conclusion, the Court also acknowledged a recent decision of the Pennsylvania Supreme Court, *Winklespecht v. Pa. Bd. of Prob. & Parole*, 813 A.2d 688 (Pa. 2002), which clarified that the amended § 331.1 did not constitute binding language requiring the PBPP to place the greatest weight on consideration of the public safety. *Id*. However, the Pennsylvania Supreme Court concluded that the *Winklespecht* decision, "made *after* the Board's actions on Thomas' parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case." *Id*. (emphasis in original).

In *Mickens-Thomas*, as well as other non-precedential cases subsequently addressed by the Third Circuit Court of Appeals, the Court recognized that an *ex post facto* violation had occurred in parole review, and the petitioners had established an undue reliance on the public safety by the PBPP in its parole decisions. *Mickens-Thomas*, 321 F.3d at 393; *see also McLaurin v. Larkins*, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); *Hallawell v. Gillis*, 2003 WL 1919371, *8 (3d Cir. Apr. 23, 2003). However, except for

individuals whose parole decisions were made after the adoption of the 1996 changes, and before *Winklespecht* clarified the fact that the amendment did not change the administration of parole policies, subsequent parole reviews are made with the understanding that the 1996 amendments did not change the analysis used in the parole proceedings.

Attached to Martinez' counter statement of material facts (Doc. 47) is the declaration of PBPP member Allen Caster (Doc. 47, Ex. A), submitted under penalty of perjury. Caster states that he has been a member of the PBPP since 1992, and the "criteria used by the [PBPP] in exercising its discretion to parole offenders has not changed at any time since . . . 1987." (Doc. 47, Ex. A at ¶ 22.) Moreover, statistics compiled by the PBPP verify that the likelihood of parole has generally increased since 1990. (*See Id.* at ¶ 12.) Further, a review of Plaintiff's parole denial on April 30, 2003 reveals that the PBPP reviewed Plaintiff for parole under the appropriate standards, notwithstanding the negative outcome. The April 30, 2003 decision was rendered well after the PBPP had the benefit of the *Winklespecht* decision, and specified the following reasons for denial of parole:

> 1) Reports, evaluations and assessments concerning [Plaintiff's] physical, mental and behavior and condition.
>
> 2) [Plaintiff's] interview with the hearing examiner and/or Board member.

(Doc. 1, Ex. U). In the decision, the PBPP not only stated that it took the required factors into account, but also noted the specific reasons why Plaintiff had been denied parole. These reasons comport with the pre-1996 requirements of the Act. Thus, the Court concludes that the PBPP, guided by *Winklespecht*, returned to the pre-1996 standards for

7

review of Plaintiff's April 30, 2003 parole application. Accordingly, the standards utilized in Plaintiff's parole review are not violative of the *Ex Post Facto* Clause, and Martinez' motion for summary judgment will be granted.

### D. Dismissal of John Doe Defendants under 42 U.S.C. § 1915

By an Order dated November 6, 2003, Plaintiff was granted leave to proceed *in forma pauperis*. The Prison Litigation Reform Act (the "Act"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) established new obligations for prisoners who file civil rights actions in federal court, and wish to proceed *in forma pauperis*. Section 1915(e)(2) of the Act states, in pertinent part, "the court shall dismiss the case at any time if the court determines that (B) the action . . . (ii) fails to state a claim on which relief may be granted . . . ." 42 U.S.C. § 1915(e)(2)(B)(ii). Further, a complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

In order to prevail on a § 1983 claim, the Plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Schiazza v. Zoning Hearing Bd.*, 168 F. Supp.2d 361, 372 (M.D. Pa. 2001). Since the Court concludes that the two parole decisions at issue did not violate the Ex Post Facto Clause of the United States Constitution, Plaintiff is unable to satisfy the second requirement of a statutory or Constitutional violation to sustain his § 1983 action, and amendment of the complaint by

naming the John Doe Defendants would do nothing to cure the deficiency.  Accordingly, the case will be dismissed as it relates to the John Doe Defendants under the provisions of 42 U.S.C. § 1915(e)(2)(B)(ii).  An appropriate Order follows.


Dated: June 28, 2005  /s/ A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**BRIAN FURMAN,** :
:
    **Plaintiff,** : **CIVIL NO. 3:CV-03-1807**
:
    v. : **(JUDGE CAPUTO)**
:
**BENJAMIN MARTINEZ, et al.,** :
:
    **Defendants.** :

## O R D E R

**AND NOW, THIS 28th DAY OF JUNE, 2005,** in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    Plaintiff's motion for partial summary judgment (Doc. 37) is **DENIED**.

    2.    Defendant's motion to amend/correct answer to complaint (Doc. 43) is **DENIED** as moot.

    3.    Defendant's cross motion for summary judgment (Doc. 45) is **GRANTED**, and the Clerk of Court is directed to enter judgment in favor of Defendant, Benjamin Martinez, and against Plaintiff.

    4.    Plaintiff's motion to amend his complaint (Doc. 50) is **DENIED**.

    5.    Plaintiff's motion to amend (Doc. 54) his prior motion to amend is **DENIED**.

    6.    The complaint is **DISMISSED** as to the remaining defendants under the provisions of 42 U.S.C. § 1915(e)(2)(B)(ii), and the Clerk of Court is directed to enter judgment in favor of the John Doe Defendants and against the Plaintiff.

    7.    The Clerk of Court is directed to close this case.

8. Any appeal from this Order shall be deemed frivolous, without good cause, and not taken in good faith.

       /s/ A. Richard Caputo  
       A. RICHARD CAPUTO  
       United States District Judge